```
              IN THE UNITED STATES DISTRICT COURT
              FOR THE NORTHERN DISTRICT OF GEORGIA
                         ATLANTA DIVISION

UNITED STATES OF AMERICA      :
                              :       CRIMINAL ACTION
           v.                 :
                              :       NO. 1:12-CR-205-1-ODE-ECS
WOODROW RUDOLPH DIXON, JR.    :
```

**REPORT AND RECOMMENDATION**
**OF THE MAGISTRATE JUDGE**

**I.**
**Introduction**

This matter is presently before the Court on the motion to suppress evidence seized from a mobile telephone, [Docs. 87, 99], filed on behalf of Defendant Woodrow Rudolph Dixon, Jr. ("Defendant"). Defendant moves to suppress any evidence obtained from the search of his Samsung cell phone by an agent with the Bureau of Alcohol, Tobacco, and Firearms ("BATF") conducted after it was seized from him at the time of his arrest on June 26, 2012. Defendant argues that the warrantless search of his phone cannot be sustained in light of the Supreme Court's recent decision in Arizona v. Gant, 556 U.S. 332, 129 S. Ct. 1710 (2009). Def's Brief at 12-13 [Doc. 134]. He submits that neither officer security nor evidence preservation —— the dual justifications for searches incident to arrest —— apply to validate the search of Defendant's cell phone and the extraction of its data. Id.

The government responds that the search of the cell phone falls squarely within the well-established exception to the warrant requirement permitting searches and seizures from persons incident to their arrest. Gov't Brief at 14-15 [Doc. 143]. The government argues that this exception encompasses the right to search any closed containers, including a cell phone taken from the arrestee's person, and that <u>Arizona v. Gant</u> does not limit this well-established exception. <u>Id.</u> at 15-16. The government alludes to the risk that the phone could be remotely locked or its data remotely deleted, thus implicating the need to preserve evidence. <u>Id.</u> at 17-18.

## II.
## The Seizure and Search of the Cell Phone

The supplemental evidentiary hearing on March 11, 2013, addressed the circumstances of the seizure of Defendant's cell phone at the time of his arrest.[1] At that hearing, Agent Spence Burnett testified that Defendant was arrested on an arrest warrant issued on the basis of a complaint charging him with conspiracy to rob an individual he believed was a drug trafficker and with possession of firearms in relation to the conspiracy. [T. 152]; Gov't Ex. 11, 13.[2]

---

[1] References to the March 11, 2013, hearing will be indicated as follows: [T. "Page"].

[2] An arrest warrant was also issued pursuant to an indictment that was returned the same day that Defendant was

2

Agent Burnett confirmed that Defendant was arrested as he exited a building and was handcuffed and secured at that time. [T. 155]. Agent Burnett also testified that before the arrest he was aware of information indicating that Defendant had used telephones in connection with the commission of the offense for which he was being arrested. [T. 152].

It was stipulated by the parties that the only phone at issue is the Samsung cell phone that Defendant had open in his hand and was using when he was arrested. [T. 135-36]. The subject phone is a Samsuung Galaxy "smart-phone" with an Android operating system. [T. 161]. Agent Daniel Arrugueta with BATF testified that he was present when Defendant was arrested and that he was the agent who seized the phone. [T. 159-60]. Defendant had exited a nearby building and was starting to get into his car when he was arrested. [T. 160]. He was ordered to put his hands on the car. [Id.]. The phone, which was in his hand, was taken from him and put on top of the car. [Id.]. Agent Arrugueta seized the phone off of the car roof and took the phone back to his office. [T. 161-62].

Agent Arrugueta further testified that when he got back to his offices he extracted the data from Defendant's cell phone, from both the phone itself and from the micro "SD Card," a storage media in

---

arrested. [T. 150-52]; Gov't Ex. 12.

3

the phone. [T. 159, 169]. He is trained in extracting evidence as a "Computer Examiner." [T. 157]. He used a device called "Cellebrite" which plugs into the phone to extract data from the phone. [T. 163]. While he was performing his extractions, Agent Arrugueta called Agent Spence to be sure that the process of booking Defendant, which was being done at a different location, was still ongoing so that his search would be "within the parameters of the incident to arrest." [T. 164]. He was advised that Defendant was still being booked. [Id.]. He burned CDs of the information he extracted from the phone. [Id.].

Agent Arrugueta had no concern that the device was dangerous at all. [T. 166]. But he also allowed as how there is always concern that data might disappear by virtue of a "remote wipe." [T. 171]. Therefore, the first thing Agent Arrugueta would do would be to turn the phone off and take out the battery. [T. 167]. These actions eliminate the possibility that the phone could be wiped remotely. [T. 185]. In this case, Agent Arrugueta did not do a "full dump" on the phone because that process can take hours and likely would extend beyond arrest and booking. [T. 169]. He would usually get a warrant if a "full dump" were needed. [Id.]. But he did extract data from the SD card, a form of storage media, which took about thirty minutes. [T. 159, 169-70]. Agent Arrugueta considered the

4

cell phone to be a "container" that he could go through as long as it was done while the booking process was still ongoing. [T. 172].

### III.
### Discussion and Analysis

The issue presented in this motion is whether the search of Defendant's cell phone without a warrant was authorized under the Fourth Amendment based upon the "search incident to arrest" exception to the warrant requirement.  The government relies upon this "long-standing" exception to the warrant requirement permitting not only the seizure of items from the arrestee's person but the search of any container, to include cigarette packs and cell phones, found on the arrestee as well, even when made after the actual arrest back at the agents' offices.  The government cites <u>United States v. Robinson</u>, 414 U.S. 218, 233-34, 94 S. Ct. 467, 476 (1973) (upholding search of closed cigarette package on arrestee's person); <u>United States v. Edwards</u>, 415 U.S. 800, 807-08, 94 S. Ct. 1234, 1239 (1974) (warrantless search and seizure of Defendant's clothing ten hours after arrest upheld where search of clothing could have been made "on the spot"); <u>United States v. Finley</u>, 477 F.3d 250, 259 (5th Cir. 2007) (upholding search of cell phone incident to arrest); and <u>United States v. Flores-Lopez</u>, 670 F.3d 803, 810 (7th Cir. 2012) (upholding search incident to arrest of cell phone for its phone

5

number but questioning whether more invasive search would be permissible).

In the face of this authority, Defendant points to <u>Arizona v. Gant</u>, 556 U.S. 332, 129 S. Ct. 1710 (2009), as having changed the calculus used to determine the applicability of this exception to seizure of cell phones. Defendant also highlights recent authority in the wake of <u>Gant</u> that limits the warrantless search of cell phone data seized incident to arrest. See <u>United States v. Wurie</u>, No. 11-1792, 2013 WL 2129119, at *11 (1st Cir. May 17, 2013) (holding "that the search-incident-to-arrest exception does not authorize the warrantless search of data on a cell phone seized from an arrestee's person, because the government has not convinced us that such a search is ever necessary to protect arresting officers or preserve destructible evidence."); <u>Smallwood v. State</u>, 113 So. 3d 724, 740 (Fla. 2013) (holding "that, while law enforcement officers properly separated and assumed possession of a cell phone from Smallwood's person during the search incident to arrest, a warrant was required before the information, data, and content of the cell phone could be accessed and searched by law enforcement."). No Eleventh Circuit authority on the point post-<u>Gant</u> has been cited to or discovered by this Court. Indeed, in <u>United States v. Allen</u>, 416 F. App'x 21, 27 (11th Cir. 2011), the Court noted that "[w]hether the warrantless search of a cell phone incident to arrest violates a person's Fourth

6

Amendment expectation of privacy is an unanswered question in this Circuit." Other courts have also noted that the Supreme Court has yet to address the specific issue of whether the police may conduct a warrantless search of data on a cell phone as an incident to a valid arrest. See Smallwood, 113 So. 3d at 733 n.5 (citing cases).

"It is well settled that a search incident to a lawful arrest is a traditional exception to the warrant requirement of the Fourth Amendment." Robinson, 414 U.S. at 224, 94 S. Ct. at 471. In Robinson, the Court, through Justice Rehnquist, made it clear that the custodial arrest of a suspect based on probable cause is a reasonable intrusion under the Fourth Amendment and requires no additional justification. Id. at 235, 94 S. Ct. at 477. The issue of whether one of the reasons supporting the authority to search a person incident to arrest was present need not be litigated in each case. Id.

> The core of the Court's holding was stated as follows:
>
> The authority to search the person incident to a lawful custodial arrest, while based upon the need to disarm and to discover evidence, does not depend on what a court may later decide was the probability in a particular arrest situation that weapons or evidence would in fact be found upon the person of the suspect. A custodial arrest of a suspect based on probable cause is a reasonable intrusion under the Fourth Amendment; that intrusion being lawful, a search incident to the arrest requires no additional justification. It is the fact of the lawful arrest which establishes the authority to search, and we hold that in the case of a lawful custodial arrest a full search of the person is not only an exception to the warrant requirement

7

>  of the Fourth Amendment, but is also a 'reasonable' search under that Amendment.

Id. Thus, in Robinson, the officer's seizure from Defendant's person of a crumpled cigarette package and the search of the package and the seizure of heroin capsules therein were found to be permissible. Id. at 236, 94 S. Ct. at 477.

Following Robinson, Courts have upheld searches and seizures incident to arrest in which containers and other items, including cell phones, were seized and searched. See United States v. Richardson, 764 F.2d 1514, 1527 (11th Cir. 1985) (search of wallet and papers found on defendant's person validly seized in search incident to arrest); United States v. McFarland, 633 F.2d 427, 429 (5th Cir. 1980) (officer entitled to read a piece of notebook paper removed from defendant's shirt pocket incident to his arrest);[3] Silvan W. v. Briggs, 309 F. App'x 216, 225 (10th Cir. 2009) (holding that "the permissible scope of a search incident to arrest includes the contents of a cell phone found on the arrestee's person" (citing Finley, 477 F.3d at 260)); United States v. Murphy, 552 F.3d 405, 410-12 (4th Cir. 2009) (upholding search of cell phone as incident to arrest); Finley, 477 F.3d at 259-60 (cell phone properly searched

---

[3] In Bonner v. City of Prichard, 661 F.2d 1206, 1209 (11th Cir. 1981), the Eleventh Circuit adopted as binding precedent all decisions of the former Fifth Circuit handed down prior to October 1, 1981.

without a warrant pursuant to defendant's arrest)); <u>United States v. Mendoza</u>, 421 F.3d 663, 668 (8th Cir. 2005) (seizure of cell phone was valid as a search incident to lawful arrest); <u>United States v. Ortiz</u>, 84 F.3d 977, 982-84 (7th Cir. 1996) (officers were authorized to seize pursuant to arrest a suspected heroin supplier's pager and wristwatch containing an electronic telephone directory in order to preserve evidence, since the pager's electronic memory was finite or could easily be destroyed or lost); <u>United States v. Gomez</u>, 807 F. Supp. 2d 1134, 1149 (S.D. Fla. 2011) (holding that "the immediate search at the scene of the cell phone's call log history, limited to phone calls from the preceding 24-48 hours, in our view, was reasonable and appropriate under Supreme Court and Eleventh Circuit precedent"); <u>United States v. McCray</u>, No. CR408-231, 2009 WL 29607, at *3 (S.D. Ga. Jan. 5, 2009) (collecting cases). Accordingly, if <u>Robinson</u> and its progeny were the governing authority applicable in this case, it would not be difficult to conclude that the search in this case should be sustained, so long as it was considered to be incident to this Defendant's arrest.

Several factors, however, make this case more difficult. For one thing, this case involves the extraction and seizure of data and private information from a cell phone. A second factor is that the search of the cell phone, while roughly contemporaneous with Defendant's arrest, booking, and interview, was conducted at the

9

agents' offices, outside of Defendant's presence, after Defendant had been taken into custody and removed to another location for booking and interview, and involved much more than just a limited search for the phone's log history or recent calls. Superimposed upon these factors is the fact that Arizona v. Gant was decided in April of 2009 and casts the prior legal authority in a different light.

In Arizona v. Gant, 556 U.S. 332, 129 S. Ct. 1710 (2009), the Supreme Court re-examined the doctrine of search incident to arrest in the context of the search of an arrestee's vehicle. Search of the person was not at issue. Nevertheless, the Court limited its holding in New York v. Belton, 453 U.S. 454, 101 S. Ct. 2860 (1981), and re-defined the parameters of such searches, finding that the area within which the arrestee might gain possession of a weapon or destructible evidence defines the boundaries of the exception. Gant, 556 U.S. at 341-44, 129 S. Ct. at 1718-19. Ultimately, the Court held that the rationale for such a search authorizes police to search "a vehicle incident to a recent occupant's arrest only when the arrestee is unsecured and within reaching distance of the passenger compartment at the time of the search." Id. at 343, 351, 129 S. Ct. at 1719, 1723-24. The court further concluded that such a search incident to arrest is also justified "when it is 'reasonable to believe evidence relevant to the crime of arrest

10

might be found in the vehicle.'" Id. at 343, 129 S. Ct. at 1719. In so holding, the Court revealed its disposition, in the context of search incident to arrest, to re-evaluate limits on the scope of such searches commensurate with their original justifications — officer safety and preservation of evidence — the same justifications undergirding the authority to search the person incident to a lawful custodial arrest. Id.; see also Robinson, 414 U.S. at 235, 94 S. Ct. at 477.

Some three years after Gant was decided, on June 26, 2012, Defendant's Samsung cell phone was seized from his hand incident to his arrest under a warrant. Defendant does not attack the seizure of the phone; instead, he challenges the search of the phone that was conducted after the arrest, away from the scene of the arrest, outside of Defendant's presence at the agent's office, where the agent plugged a device into the phone and extracted the data from the phone itself and from its "SD card." Def's Brief at 10 [Doc. 134]; see [T. 163]. Recently, at least one circuit court and one state supreme court have addressed similar situations involving seizures and searches of cell phones and have concluded, after a discussion of Gant, Robinson, and most of the extant authority both pro and con, that such a search violates the Fourth Amendment. See Wurie, 2013 WL 2129119, at *11; Smallwood, 113 So. 3d at 740.

11

After carefully considering Gant, Wurie, and Smallwood, along with the other authority cited above, I conclude that the reasonableness under the Fourth Amendment of the warrantless search of Defendant's cell phone seized from his person incident to his arrest should be closely examined in light of the dual justifications for the warrant exception, balancing these justifications against the nature of the privacy intrusion implicated in the seizure. Here, the validity of the government's seizure of the phone itself is not at issue. Under the bright line rule in Robinson, there seems no question the government could seize the phone incident to Defendant's arrest. What happened after the seizure is at issue. In this case, the Court is concerned with Defendant's privacy interest in the data and other private information in his cell phone. Agent Arrugueta clearly went beyond merely seizing the phone, examining it to ascertain that it was not a weapon, and preserving it. He took it back to his office and extracted all the data he could extract using a data extraction device. This intrusion was more than minimal.

This is not a case where there was any threat that the arrestee might use the cell phone as a weapon, in view of the fact that the phone had been immediately seized from him, and, secondly, because it was immediately ascertained that it was not a weapon. Nor is this a case where there was any viable threat that the phone data

12

could be remotely wiped or destroyed.  Once the officer had possession of the phone it could be immediately shut off or put in "airplane mode" and/or its battery removed, effectively eliminating any possibility of such a remote intrusion pending examination of the phone in a controlled environment. [T. 166-67].  There would have been ample time, in other words, for the agents to obtain a warrant, properly limited in scope, assuming the officers had probable cause to justify the search.[4]

Furthermore, the privacy interests that an individual has in his or her cell phone, given the nature of such phones today, distinguishes it from an individual's wallet, for example, which may be examined immediately upon arrest in order to confirm identity, among other things, or a briefcase, which may contain a weapon, or other dangerous instrumentality, or destructible evidence.  Modern cell phones, like Defendant's Samsung, are in effect mini-computers, and contain contacts, text messages, photographs, calendars, notes and memos, instant messages, voice memos, and e-mail messages — a wealth of private information held within a small digital "container," as it were, but a different kind of container from a

---

[4] The nature of the probable cause would perforce dictate the permissible scope of the search warrant. Not all probable cause to search would necessarily authorize a "full dump," as Agent Arrugueta described it, of the phone. A lesser intrusion, by way of a more limited search protocol, might be mandated.

13

crumpled cigarette package or even a footlocker.[5] As opposed to a foot locker, or a cigarette pack, which are capable of holding other objects, a cell phone is an integrated digital device that holds only data and digitally stored information.

Requiring a warrant in these circumstances before such a search may be conducted does not impair the legitimate interests of the government in ensuring the safety of the arresting officers and the preservation of any evidence. These interests were fully protected in this case by immediately taking the phone from the Defendant's hands incident to his arrest and securing it. At the same time, by requiring a warrant in this situation for the search of the phone, the legitimate privacy interests of the arrestee can be protected, while still permitting the phone to be immediately seized and preserved pending further action.

## IV.
## Conclusion

Accordingly, in consideration of the Supreme Court's recent decision in Gant, which limited the scope of Belton in light of the

---

[5] United States v. Chadwick, 433 U.S. 1, 15-16, 97 S. Ct. 2476, 2485-86 (1977), which did involve a footlocker, is informative. There the warrantless search of a footlocker was held unconstitutional where the footlocker was seized from the trunk of the arrestees' automobile after their arrest. Id. The footlocker was safely separated from the arrestees and transferred to a federal building under the exclusive control of law enforcement where it was searched an hour and a half later. Id. at 4-5, S. Ct. at 2480.

14

root justifications underlying the exception for searches incident to arrest, and balancing these justifications against the legitimate privacy interests inherent in the nature of advancing digital technology, I conclude that Agent Arrugueta violated Defendant's Fourth Amendment rights when he took Defendant's cell phone back to his office and searched, downloaded, and extracted all the data he could from it and its storage media.  The fact that Defendant had been arrested but was still being booked and/or interviewed should not determine the validity of such a search.  Since the search could not be made "on the spot," it could not be made later.  Cf. Edwards, 415 U.S. at 803, 94 S. Ct. at 1237.  Thus, the motion to suppress evidence, [Docs. 87, 99], should be **GRANTED**, and any evidence obtained from the Samsung cell phone after it was seized from Defendant when he was arrested should be suppressed.[6]

**SO REPORTED AND RECOMMENDED**, this 29th day of August, 2013.

*s/ E. Clayton Scofield III*
E. Clayton Scofield III
UNITED STATES MAGISTRATE JUDGE

---

[6] I observe that Agent Arrugueta clearly believed he was authorized to search "containers," including cell phones, under the search incident to arrest exception to the warrant requirement. The government has not, however, made any argument that the search could or should be validated under the good-faith exception to the exclusionary rule. The undersigned, therefore, expresses no opinion on this issue. Cf. Wurie, 2013 WL 2129119, at *12 (belatedly raised); Smallwood, 113 So. 3d at 738-39 (doctrine not applicable).

15